THE MAYOR AND ALDERMEN OF JERSEY CITY, appellants,

*v.*

HENRY W. GARDNER et al., respondents.

1. Lands condemned by a municipal corporation and in public use for a street before payment of award of damages, will not, at the instance of the owner, be restrained in their use by injunction, where a remedy at law exists, either by ejectment or by suit for the award.

2. Where lands are so taken, and the duty to pay an award therefor, and the right of the owner to be paid, is complete, the owner may maintain an action for the award if the statute directing proceedings for condemnation provide no special mode of enforcing payment.

3. Rights which inhere in the party seeking aid in court, must determine the jurisdiction, and not those of the defendant.

On appeal from a decree of the chancellor, reported in *Gardner* v. *Jersey City, 5 Stew. Eq. 586.*

During the years 1867 and 1868, the corporation of the "Town of Bergen, in the county of Hudson," now represented by the appellants, under the provisions of its charter touching the laying out of public streets, opened within its territory a public street, in extension of Jackson avenue. In doing so, certain lands in said town in the then ownership of George H. Sackett, were taken and condemned as a part of the street so laid out. In these proceedings an award of $960.76 was made to the owners for the value of the lands and the damages above the assessment for benefits to their other property. These proceedings were ratified by proper authority, and the street was duly established, opened to the public use and a sewer built in it. The lands taken for the street and other lands adjoining, belonging to Sackett, were conveyed to complainants. The award has not been paid to either Sackett or complainants, although demanded by both. Under the charter, by virtue of which these proceedings for

Mayor and Aldermen of Jersey City v. Gardner.

condemnation were had, payment of the award was directed to be made to the owners by the corporation, and upon such payment being made the title to the lands vested in the city.

Under this state of facts the complainants filed their bill, praying that the appellants be enjoined from the further use of the complainants' lands and of the sewer built therein, unless it pay the complainants the said award and interest within such short time as the chancellor should limit.

The answer admits the essential facts. It sets up certain acts of the complainants subsequent to the condemnation proceedings, which, it avers, work a dedication of the lands to the public as a street, and thereby estops them from setting up any title which they may have against the public use of said lands for a street. Against the complainants' rights to recover the award, the statute of limitations is claimed to be a bar. It denies that the complainants present any ground for relief in a court of equity, and claims that they are afforded an adequate and complete remedy at law.

The chancellor, upon the pleadings and proofs, decreed that unless payment be made by the appellant of the award and interest to complainants, within thirty days from service of a copy of the decree, the city be perpetually enjoined from using, or permitting to be used, the said land for street or sewer purposes.

*Mr. A. L. McDermott* and *Mr. Leon Abbett*, for appellants.

I. The facts of this case are stated in the opinion of the chancellor in the suit brought by Gardner and others against Jersey City.

II. The real question at issue between the parties is, whether or not there was a dedication of the land in question for the purposes of a public street. The award was made over six years ago, and if a suit had been brought upon that, the city could have pleaded the statute of limitations, and successfully defended against it. The complainant, however, claims that as the award was not paid to him, there was no legal taking of the land under

the case of *Mayor &c. of Jersey City* v. *Fitzpatrick, 7 Vr. 120,* and that he is, therefore, entitled to the relief he prays for in this case under the same case in chancery, *3 Stew. Eq. 97.*

III. The city claims that this street was dedicated to public use under the authority of the case of *Clark* v. *City of Elizabeth, 11 Vr. 172.* The city also calls attention to the case of *State, Kiernan pros.* v. *Jersey City, 11 Vr. 483.* The city also refers to the case of *Price* v. *Inhabitants of Plainfield, 11 Vr. 608,* for the purpose of showing that the word "street" written on a map, and the sale of lands by it, operate conclusively as a dedication. In that case it was the dedication of a park by the word being written on the block on a map of said property.

IV. The testimony upon which the city relies to establish the dedication is the following [discussing it].

V. The city claims that the complainants and the owners of the property have, for the last ten or twelve years, assented to the opening of the street, which has existed as an open street all that time; that their only claim since 1868 has been for the award; that they could have brought suit at any time within six years after the award, for the payment of the award; that they abandoned the claim to the land and relied upon the award since 1868; that in 1879, even if they never had done so before, the complainants made a conclusive dedication of the street to the public by the making of the map, selling lands by reference to it, and receiving ten per cent. of the purchase-money on such sales, and that this action of theirs, in connection with the recognition of Jackson avenue in the deed, settles the case as a dedication conclusive upon the complainants; that if a suit had been brought upon the award, the city could have pleaded the statute of limitations; that if a suit had been brought in ejectment, for the land taken, the city could have pleaded the dedication successfully, and that an attempt to compel the city to pay the award or surrender the land by a suit in equity, is an attempt to create a right which does not exist at law in behalf of the complainants.

*Mr. G. Collins*, for respondents.

I. The decree was within the power of the court of chancery. *Bonaparte* v. *Camden and Amboy R. R. Co., Bald. 205; Stevens* v. *P. & N. R. R. Co., 5 C. E. Gr. 126; Mettler* v. *E. & A. R. R. Co., 10 C. E. Gr. 214; M. & E. R. R. Co.* v. *Hudson Tunnel R. R. Co., 10 C. E. Gr. 384; Morris Canal &c. Co.* v. *Jersey City, 11 C. E. Gr. 294; Pierpont* v. *Harrisville, 9 W. Va. 215.*

II. The suit is barred by no statutory or other limitation. *Loweree* v. *City of Newark, 9 Vr. 156.*

III. There was no dedication. One cannot dedicate what he does not own. *Wash. on Ease. 186; Bailey* v. *Copeland, Wright (Ohio) 150; United States* v. *Chicago, 7 How. 185, Clark* v. *City of Elizabeth, 11 Vr. 174.*

The power of the trustees to sell as they did has been questioned. If they had no power to sell, they had none to dedicate.

The legal title to the land (if the trust deed be void) is vested in them by the general assignment, and they can, at any time, give the required bonds; or, if they refuse, the court of chancery can appoint trustees to succeed them in the interest of the assignors' creditors. *Scull* v. *Reeves, 2 Gr. Ch. 84; Alpaugh* v. *Roberson, 12 C. E. Gr. 96; Wilt* v. *Franklin, 1 Binn. 502; Cunningham* v. *Freeborn, 11 Wend. 241; Funk* v. *Newcomer, 10 Md. 301; Price* v. *Parker, 11 Iowa 144; Rev. p. 37 § 3.*

Knapp, J.

The principal question presented for consideration is whether a court of equity should entertain jurisdiction of the cause on the facts disclosed in the case.

That courts of equity do not entertain jurisdiction of causes where there exists, at law, a remedy plain, adequate and complete to redress the wrong complained of, stands prominent amongst the rules which serve to define the boundary of jurisdiction between courts of law and courts of equity. The various recognized heads of equity are but a classification of subjects in

40

which legal remedies are wanting or afford imperfect and incomplete justice. *Story's Eq. Jur.* § *33.*

The rule as applied to the remedy by injunction—the subject in hand—has abundant recognition and support in the decided cases in this state. *M. & E. R. R. Co.* v. *Pruden, 5 C. E. Gr. 530 ; Higbee* v. *C. & A. R. R. Co., 5 C. E. Gr. 435 ; Carlisle* v. *Cooper, 6 C. E. Gr. 576 ; Stevens* v. *Erie Railway Co., 6 C. E. Gr. 259 ; Morris Canal Co.* v. *Fagan, 7 C. E. Gr. 430, 436, 437.*

The learned chancellor in this case recognizes it in his opinion. Chancellor Zabriskie says, in Stevens v. Erie Railway Co. : "Injunctions do sometimes issue to restrain constantly-repeated trespasses, requiring a continued succession of suits, but not where ejectment will restore the complainant to all his rights."

The controversy usually, in these cases, is not over the existence of such rule, but over the quality and extent of the remedy to be found in the law court, as applied to the case made by the complainant.

The case here is, that lands of the complainants below were taken by the town of Bergen, a corporation now represented by the appellant, for a public street; that they were appropriated to, and continued in, that use by the corporation, without making payment of- the compensation lawfully awarded to the owner, when the charter under which such lands were condemned requires payment to be made before the title can vest in the corporation. In other words, that the town took possession of complainants' lands, and still holds them without lawful right or authority.

For such a wrong the action of ejectment generally lies, the result of such remedy being to give to the plaintiff, if successful, the possession of his lands, and, under present procedure, damages for their detention. This gives as ample and complete redress as is within the power of any court to afford a suitor. The chancellor concedes that the complainant had this remedy at will.

In the case of *Fitzpatrick* v. *Jersey City, 7 Vr. 120,* the supreme court sustained a recovery in ejectment for lands taken

for the same street, holding that, under the charter of the town of Bergen, the city had neither title to nor right of possession of lands taken for a street until payment of the award therefor was actually made.   The case involved the interpretation of provisions contained in the thirty-third section of the charter of 1864, (*P. L. p. 420*).

The section provides for paying or tendering the award for lands to the owner, and enacts that after filing the receipt of the owner &c., " the said lands shall be vested in the town, and the town officers may proceed with said improvement."   Some doubt has been thrown on this case by a seeming conflict between it and the decision in this court in *Lehigh Valley R. R.* v. *McFarlan, 4 Stew. Eq. 706*, and the series of cases construing the charter of the Morris Canal Company, which the McFarlan case followed. The sixth section of that charter contains provisions in respect to the title to lands and water required for the canal, closely resembling those found in the Bergen act.   In that case, it was held that the provisions for prepayment did not abridge the present right of the company to take and appropriate to its use lands and waters and hold them against the legal owner, although the title to them does not finally vest until compensation be made. And in *Den* v. *Morris Canal, 4 Zab. 587*, ejectment was held not to lie for such lands.   It is to be remembered that in the charter of the company express provisions are found, giving authority, after survey filed, to take possession of and use such lands and waters, subject to such compensation as is directed to be made in the act.   The charter of Bergen contains no such express provisions.   There is room, therefore, for distinguishing between the cases.   But whether the same rule may not be applied here, rested upon implied powers in the town charter to take possession, is a question of practical moment, because, among other reasons of the manifest inconvenience and impolicy of making the right to possess and hold property in its streets to depend on mere matter of parol, namely, the fact of paying money, and not upon the recorded proceedings in condemnation, coupled with the open possession and public use of them, and especially so if there exists a right of suit for the award.   The legislative

intent, in the absence of clear expression, to permit public streets paved, sewered and built upon, to be seized by the adjoining land-holder because of the neglect of the public agents to perform their duty of payment, may admit of doubt. The point was so little considered in the argument that the question ought not now to be conclusively decided unless the exigencies of this case require it. I think they do not. If the action be maintainable, it affords an ample remedy; if it be not, then the theory, as will hereafter be noticed, upon which jurisdiction in this case was retained, falls. And whether maintainable or not, the plaintiff in a case like this has, irrespective of it, under our legal methods, a full and ample remedy at law of the nature aimed at by the complainant in this suit. When the conditions have arisen on which it is made the duty of the city to pay, and the right of the owner to be paid, an ascertained amount of compensation, the owner may have a suit at law for its recovery, or, at his instance, payment may be enforced by *mandamus*. And such right of suit is not dependent upon express authority in the act to sue; it exists if no other statutory mode of obtaining payment is pre-scribed. So long as there remains in the municipal body con-demning lands under the power of eminent domain, the right of withdrawal from the condemnation proceedings, there can be no such right of action, but the liberty to so retire ceases upon the legal adjustment of the amount to be paid, and the acceptance by the public body of the property. *In re Commissioners &c., 2 Vr. 73; Mahon v. Freeholders of Hudson, 10 Vr. 640; O'Neil v. Freeholders of Hudson, 12 Vr. 161.*

Final ascertainment of compensation to the land-owner, and approval of the assessment by the corporation entering upon the possession of the lands and devoting them to the intended public use, show, unequivocally, such an acceptance.

The situation of the complainants, in respect to their right of suit for the award, may be briefly stated thus: The public authorities of the town have, under competent legal right, con-demned their lands for a public street; commissioners have, in the manner prescribed by law, assessed the amount of compensa-tion which the town shall pay and the owner receive; the town

authorities have duly approved the award, and have entered upon the possession of the lands and subjected them to the use for which they were condemned. The duty to pay, and the right to be paid, are then complete. Standing upon this ground, there being no prescribed mode under the statute in which payment is to be enforced, the right of suit is complete as upon implied *assumpsit*, upon the established principle that where there exists a duty to pay the law raises a promise to do so.

Judge Dillon says where the owner's right to damage is complete or vested, he may, in proper cases, sue the municipality therefor, or have a *mandamus* to compel it to pay or to proceed to collect the assessment which constitutes the fund from which payment must come. *Dillon on Mun. Corp.* § *479*, and cases cited.

The "proper cases" for a suit, as I understand that author, are where no other specific mode of redress is prescribed in the act which directs the improvement.

But this charter goes further, and in express terms commands:

"That upon completing the report of the commissioners of assessment, assessing the value of the lands so taken, and the damages thereby, the city treasurer shall tender and pay to the owner of said lands the amount of such assessment due him."

There is thus created a statutory obligation on the town to pay the sum awarded. To deny this duty is to deny the authority of the statute. Duty to pay money, however, arising, creates civil obligations which courts of law are constantly enforcing by their judgments.

It is contended against the complainants' right of suit for the money awarded, that payment of the money being a condition precedent to the vesting of title in the municipality, no suit will lie, because the lands are not yet taken. It is sufficient to say that the act does not vest the duty to pay the allotted compensation upon any such condition, but, on the contrary, it orders it to be made before the title could, by the terms of the act, vest in the corporation. Upon payment made, whether voluntarily or by force of a judgment, the lands will, for the purposes intended, vest in the corporation.

The provision deferring the vesting of the legal title until the award be actually paid, was intended to serve the interest of the land-owner, and it would be a perversion of the legislative intent to allow it to operate as an impediment to, or deprivation of his legal right to compensation by suit.   The complainants were then armed with a right of action to recover the money awarded them for their lands, with the interest.   This legal remedy, without the ejectment, possesses larger efficiency with less inconvenience and expense, than does the alternate decree which the chancellor was able to afford.   While the decree restrains the city and the public from the use of the lands for a street, it leaves the owner out of possession.  As a decree for the award, payment is optional with the party charged.

The chief ground for claiming jurisdiction in this case is, that the complainant's remedy by ejectment is too large, in that it gives more than a court of equity would, in the interest of defendant's permit the complainants to enjoy.   Cognizance is, therefore, taken of this cause, not because of the equitable rights of the complainants who seek that forum, but because of equities of the defendants resting on the contingency of a judgment in ejectment against it.

I think it is a general rule that the character of the rights which inhere in the person seeking redress in court determines the tribunal which he must resort to for their adjudication and enforcement.   And as a rule, recourse can be had to a court of equity only when the suitor himself comes, clothed with such rights as give him standing there.   Jurisdiction is not gained through the defendant's *status*.   Exceptions may exist to the rule, and the common foreclosure proceeding may, in some of its features, indicate such an exception.   There, the owner of the legal title has standing in equity because of the wide and well-recognized difference between the form of the contract, viz., a conveyance in fee defeasable upon a condition subsequent, and that which, within the true intent and meaning of the parties, it was designed to be—a real security for a debt.   The mortgagee was let in after default, to have the lands sold to pay his debt immediately, or to call upon the mortgagor to redeem his estate pres-

ently, or, in default thereof, forever to be foreclosed from redeeming the same.    All the rights of the parties rest in a single contract.

But this case is not exceptional, and whatever equitable rights the defendants may have, whether present or contingent, upon a judgment in ejectment against it, assuming the action to be maintainable, does not afford ground for the transfer of the complainant's clear legal rights to the equity court for adjudication.

The equities of the defendants could not arise for consideration except upon a judgment in ejectment, and in such action it would be the right of the city to be heard in defence.    Here the defendants claim that there was a subsequent dedication of the lands. This is a matter *in pais*, determinable upon intent as evidenced by the acts and declarations of the owner.    That there was no conclusive act of dedication shown in this case is clear, but that is not a requisite measure of proof, and before the consequences which a judgment in ejectment would force upon the city are to be encountered, it should be permitted to have such defence heard in the law court.

It can scarcely be questioned that the fact of subsequent dedication being found, while it would in no measure affect the vested right of the complainants to be paid their award, would defeat a recovery in the ejectment suit.    But further, under the forty-third section of the ejectment act (*Rev. 332*), it would be the right of the defendants, under a suit in ejectment, to pay the amount of the award at any time before, and possibly during the trial, and so defeat the recovery of the lands.    The defendants' equities might, therefore, never arise to be enforced.

The plain purpose of this suit was to enforce payment of the damages awarded the complainants by the commissioners, and in justice they ought to be paid by the city, but such payment should, as it may, be enforced where such suits are normally prosecuted.

The jurisdiction cannot be maintained as a measure for the prevention of irreparable injury.    All has been done that is proposed by the city to be done.    No such injury is imminent or contemplated.

Nor is the bill maintainable as preventing multiplicity of suits or avoiding circuity of actions.

Where the court takes hold of a cause under some ground of equity, as for discovery or account, it is within its power to retain the cause and finally dispose of it to avoid multiplicity of suits. So, too, in trespasses of the character mentioned in the case of Stevens *v.* Erie Railway, above referred to. But this case can-cannot stand in either category.

I deem it unnecessary to consider or decide whether the statute of limitations affecting simple contracts applies to an action on an award for lands made under charter provisions like those of the Bergen act of incorporation, or whether it is to be regarded as a demand upon statute, because, whether applicable or not, could not vary the principles upon which jurisdiction must be decided.

For the reasons above given, I think the suit was wrongly brought in the court of chancery, and the bill should have been dismissed. I shall therefore vote to reverse the decree.

For reversal—BEASLEY, C. J., DEPUE, DIXON, KNAPP, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, CLEMENT, COLE, GREEN—12.

For affirmance—DODD—1.