36 N.J. Super. 241 (1955)
115 A.2d 592
MILMAR ESTATE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF FORT LEE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1955.
Decided June 29, 1955.
*242 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Walter G. Winne argued the cause for plaintiff-respondent (Messrs. Winne & Banta, attorneys).
Mr. William V. Breslin argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The principal issue here is whether certain land of the plaintiff can be subjected by the defendant to local property taxes for 1954, even though the taxes were not assessed by the defendant until after the State of New Jersey, through the State Highway Commissioner, had taken possession of the land under condemnation proceedings.
The Highway Commissioner filed his petition instituting the condemnation proceedings June 29, 1953, but, by agreement with the plaintiff, postponed taking possession of the property until September 30, 1953. The 1954 taxes are assessable with reference to the ownership of the property on October 1, 1953 and, in certain connections, with reference to its use on that date. Jabert Operating Corp. v. City of Newark, 16 N.J. Super. 505, 509 (App. Div. 1951). These taxes, if validly assessed, were made a lien on January 1, 1954. N.J.S.A. 54:5-6; cf. Empress Mfg. Co. v. City of Newark, 109 N.J.L. 131 (E. & A. 1932).
*243 On January 15, 1954 the condemnation commissioners made an award which, with interest from September 30, 1953, was paid into the Superior Court on March 8, 1954. Plaintiff was advised that in order to withdraw this money from the court, it should present proof from defendant's tax collector that all taxes on the property due the defendant were paid. The 1953 taxes had already been paid; however the collector refused to furnish the proof desired, unless taxes for the first half of 1954 were also paid. Accordingly, on June 4, 1954, plaintiff paid these taxes and then brought this suit in the Superior Court, Law Division, to recover the amount of them, with interest. Summary judgment was entered in its favor. Defendant appeals. We deal first with the taxes, then with the interest.
On the oral argument, it was stipulated, first, that the payment of these 1954 taxes to the collector may be deemed to have been not voluntary, and, second, that a determination of the county tax board (made on plaintiff's appeal to the board) that these taxes were not due, may be disregarded by us.
That leaves us with the substantial question, namely (as we see it) this: assuming that title to the property did not vest in the State until the award was paid into court, nevertheless does that title then relate back to the time the State took possession of the property? If so, the assessment made October 1, 1953 was clearly without effect. N.J.S.A. 54:4-3.3. In this view of the case we need not deal with the Apportionment Act, N.J.S.A. 54:4-56.
The State Highway Commissioner, pursuant to statutory authority to "enter upon and take property in advance of making compensation therefor," appropriated to the State the beneficial user of plaintiff's land and buildings on September 30, 1953. R.S. 27:7-22 (the terms of which, though somewhat modified through various amendments, can be traced back to L. 1919, c. 226, p. 524); New Jersey Constitution 1947, Art. I, par. 20; Abbott v. Beth Israel Cemetery Ass'n, 13 N.J. 528, 549-550 (1953); Wheeler v. Essex Public Road Board, 39 N.J.L. 291 (E. & A. 1877).
*244 The terms of this statute (authorizing the Highway Commissioner to "enter upon and take property in advance of making compensation therefor") are inexplicit as to whether or not title passes on the taking of the property. We shall assume however that title does not finally vest in the State until the award is paid or tendered to the parties entitled, or duly paid into court. See Lehigh Valley R. Co. v. McFarlan, 31 N.J. Eq. 706, 725 (E. & A. 1879), where the court was dealing with the eminent domain provisions in the 1824 charter of a canal company, namely, "to enter upon, take possession of and use" lands, subject to making compensation later; Jersey City v. Gardner, 33 N.J. Eq. 622, 627 (E. & A. 1881); Kennedy v. City of Indianapolis, 103 U.S. 599, 604 (1881); Rexford v. Knight, 11 N.Y. 308, 314 (1854); Note, 16 L.R.A., NS, 537, 539 (1908); cf. Delancey & Stockton Corp. v. Reliable Imp. Co., 134 N.J. Eq. 71, 75 (E. & A. 1943)  the court there had no occasion to consider what the effect of N.J.S.A. 27:7-22 would be if in fact the State Highway Commissioner had taken possession of the lands in advance of payment; In re Essex County Park Commission, 80 N.J. Eq. 1 (Ch. 1912), affirmed on other grounds sub nom. Bowers v. Town of Bloomfield, 81 N.J. Eq. 163 (E. & A. 1912); Metler v. Easton & Amboy R. Co., 37 N.J.L. 222, 224 (Sup. Ct. 1874).
But this does not end the question. It must be apparent that where a condemnor enters property in advance of making compensation, it would be most unjust not only to deprive the owner of the benefit of his property and of the ad interim use of any compensation therefor (except by way of interest paid him subsequently on the award), but also, through taxes, to compel him to bear the burden of local governmental costs allocated to that property. The cases, recognizing this injustice, have made amends for it in two different ways. Compare Sherwin v. Wigglesworth, 129 Mass. 64 (Sup. Jud. Ct. 1880) with In re City of New York, 40 App. Div. 281, 58 N.Y. 58 (App. Div. 1899); In re City of New York (Matter of Riverside Park), 59 App. Div. 603, 69 N.Y.S. 742 (App. Div. 1901), affirmed on opinion 167 N.Y. 627, 60 N.E. *245 1116 (Ct. App. 1901). See Bowers v. Town of Bloomfield, 81 N.J. Eq. 163, 165 (E. & A. 1912), citing these three cases (not noticing, however, that the condemnor there had entered upon the land) and remarking that the result achieved by them "is manifestly equitable." See also Yara Engineering Corp. v. City of Newark, 136 N.J. Eq. 453, 464 (Ch. 1945), wherein the court, citing condemnation cases and dealing with property turned over to the city, was called upon to fix its value on an equitable basis and, incidentally in so doing, apportioned taxes as of the time of the city's entry on the property. See Fishel v. City & County of Denver, 106 Colo. 576, 108 P.2d 236, 242 (Sup. Ct. 1940).
Sherwin v. Wigglesworth, 129 Mass. 64 (Sup. Jud. Ct. 1880), supra, redresses this injustice we speak of, by invoking the doctrine of relation back. In the opinion there by Chief Justice Gray (O.W. Holmes, Jr., appearing for the prevailing defendants), it is stated that the taxes were
"imposed after [the land had] been designated and set apart for the public use, and while [the owners] cannot enjoy, nor improve it." 129 Mass., at page 66.
Compare People ex rel. Carofiglio v. Gill, 291 Ill. App. 143, 9 N.E.2d 581, 584 (1937). It appears thus that, as in the instant case, the condemnor had secured for itself the possession and enjoyment of the land before the taxes had been imposed. Chief Justice Gray held:
"In theory of the law, although the compensation cannot be paid until it has been estimated, nor the title pass until the compensation is paid, yet both the compensation paid and the title acquired have relation back to the inception of the proceedings for the condemnation of the land to the public use."
The court concluded with the view, we have already expressed, that "it would be most unjust to charge the owners of the land with" the taxes under those circumstances.
In Illinois it is held  apparently regardless of when the condemnor takes possession of the property  that the condemnor's title, though it vests only on the payment of compensation, nevertheless relates back to the date on which the *246 condemnation petition is filed; and that upon this theory the land is freed of liability for any taxes levied after that date. Chicago Park Dist. v. Downey Coal Co., 1 Ill.2d 54, 115 N.E.2d 223 (Sup. Ct. 1953); cf. Independent-Consolidated School Dist. v. Waldron, ___ Minn. ___, 63 N.W.2d 555, 557 (Sup. Ct. 1954); State v. Floyd, 204 N.C. 291, 168 S.E. 222 (Sup. Ct. 1933); cf. also Bemis Hardware Lumber Co. v. Graham County, 214 N.C. 167, 198 S.E. 843, 846 (Sup. Ct. 1938), where the statute did not authorize entry by the condemnor before payment of compensation. We do not deal with the case where the owner retains possession pending the condemnation proceeding  except to note that there the equities of the situation are utterly different. The owner in such a case has had the benefit of the property until the award is paid. Cf. City of Los Angeles v. Los Angeles Pac. Co., 31 Cal. App. 100, 159 P. 992, 998, 999 (D. Ct. App. 1916); Connor v. Brake, 333 Mich. 219, 52 N.W.2d 672 (Sup. Ct. 1952).
We pass only upon the situation at hand, namely, where the State Highway Commissioner under R.S. 27:7-22 takes possession of land prior to October 1 and in advance of furnishing compensation. In such a case, even though the State may not acquire title until the award is paid or tendered to the parties entitled or duly paid into court, nevertheless we conclude that for the purpose of fixing liability for the next year's taxes, the State's title relates back to the time of his (the Commissioner's) entry on the land. The result is, as the court below held, that the 1954 taxes here were not due and hence may be recovered.
It will be said that the rule laid down here presents certain practical difficulties, for the tax collector will not be able to verify the time as of which title passed, without ascertaining when the condemnor took possession  a matter not appearing of record. City of Hartford v. Pallotti, 88 Conn. 73, 89 A. 1119 (Sup. Ct. Err. 1914). This consideration has some force, but we think the equities on which the rule is founded more than counterbalance it. The whole problem presented by the present appeal could of course be resolved *247 by explicit legislation. Cf., e.g., N.J.S.A. 32:1-35.15, particularly paragraph (r).
The New York cases, above cited, work out these equities in a different fashion, namely, by including in the award the amount of taxes accruing between the time of the appropriation and the time of the award. In re City of New York, 40 App. Div. 281, 58 N.Y.S. 58 (App. Div. 1899), supra (note that the title to the land did not vest in the city-condemnor until after it had appropriated that land), commenting on the injustice of the city's theory there (quite like the defendant's theory here), under which the owner would have been deprived of the benefit of his land and at the same time made to submit to taxes thereon. Cf. In re City of New York (Matter of Riverside Park), 59 App. Div. 603, 69 N.Y.S. 742 (App. Div. 1901), affirmed on opinion 167 N.Y. 627, 60 N.E. 1116 (Ct. App. 1901), supra, furthermore allowing as an offset in computing the award, rents received or rental values accruing to the owner. Minnesota has a statute requiring the award to include all taxes imposed upon the property after the filing of the condemnation petition, provided they are paid by the owner before payment of the award. Independent-Consolidated School Dist. v. Waldron, ___ Minn. ___, 63 N.W.2d 555, 558 (Sup. Ct. 1954), supra. This indeed may be a solution of the situation, but we rather feel it is of a sort that a court should not impose without legislative sanction.
So much for the question as to taxes.
The second question in this case is whether the defendant municipality, on refunding the amount of these taxes, should be subjected to interest thereon from the date plaintiff paid the taxes. Jersey City v. O'Callaghan, 41 N.J.L. 349, 352 (E. & A. 1879), cannot today be said to stand for the proposition that wherever a municipality without right receives money in payment of a tax assessment, it is liable for interest thereon. See Borough of Edgewater v. Corn Products Refining Co., 136 N.J.L. 664, 670 (E. & A. 1947), and Hahne Realty Corp. v. City of Newark, 119 N.J.L. 12, 17 (E. & A. 1937), both denying interest.
*248 The two cases last cited are not on all fours with the present case, but there is a similarity or some analogy there in three respects. In the first place, one of the factors entering into the decision in the Hahne Realty Co. case was that there had been no illegality per se in the assessment; there was merely an error of judgment in that the assessor had put too high a valuation on the property in question. Under the rule we have adopted here, the tax liability is in effect extinguished because of the relation back of the condemnor's title; in other words, we accept the assessment as valid when it was made.
In the second place, as in the Hahne case, the plaintiff here "chose to pay first [under protest, according to the stipulation in the present case] and litigate later" as to whether or not the taxes were due.
In the third place, there is the point made in the Edgewater case (a case quite like the present one, except that there title clearly passed to the condemnor at the inception of the condemnation proceeding. It may be noted, too  if it is a matter of any consequence on the question of interest  that in that case there was, not an extinguishment of a tax claim through a relation back, but an abatement of a portion of a tax in accordance with the Apportionment Act, R.S. 54:4-56). In Edgewater it is held that the statute calling for the payment of taxes in quarter-annual installments furnishes (in the absence of another statute expressly providing for interest) some indication of a legislative intent not to subject a municipality to the payment of interest on the abatement of a tax; for such payment would "result in disarranging local budgets." Such a disarrangement of course follows upon a relation back of the condemnor's title here, much as it does upon an abatement of a tax.
Taking these three factors together (we need not consider whether any one of them, of itself, would suffice), we conclude the municipality should not be charged with interest here.
Modified, so as to eliminate from the judgment the interest claimed.