GREENSBORO-HIGH POINT AIRPORT AUTHORITY v. PEARL TAYLOR IR-
    VIN, CHARLES WATSON IRVIN, JR. AND WIFE, MARY S. IRVIN, JOHN
    LAFAYETTE IRVIN AND WIFE, NANCY B. IRVIN, DORIS IRVIN EGERTON
    AND HUSBAND, GEORGE G. EGERTON

No. 19PA82

(Filed 13 July 1982)

1. **Eminent Domain § 5.2— date for valuation of condemned property**
    The date for the valuation of the property in a Ch. 40 condemnation pro-
    ceeding is the date on which the petition of condemnation is filed, and the
    Court of Appeals erred in holding that the property should have been valued
    as of the date of the trial because the condemnor had not paid into court the
    amount of the commissioners' award pursuant to G.S. 40-19.

2. **Eminent Domain § 5.10— failure to pay commissioners' award into court—in-
    terest on jury award**
    Where the condemnor in a Ch. 40 condemnation proceeding voluntarily
    chose not to pay the amount of the commissioners' award into court and
    therefore deprived itself of the right to actual possession of the property, the
    respondents are entitled to interest on the jury award at the legal rate of 8%
    from the date the commissioners' report was filed to the date the condemnor

paid the amount of the judgment entered on the jury verdict, and the appropriate interest may be added by the trial court upon remand. G.S. 24-1.

Justice CARLTON dissenting.

ON discretionary review of a decision of the Court of Appeals, 54 N.C. App. 355, 283 S.E. 2d 171 (1981). A petition to condemn respondents' property was filed on 1 July 1975. At the trial of the matter in November 1980 respondents' land was valued as of 1 July 1975, the date the proceeding was commenced. The jury fixed the value of the land as of that date at $400,000.00 and judgment was entered on the verdict. Respondents appealed to the Court of Appeals and that court, reversing the trial court and awarding a new trial, held that the property should have been valued as of the date of the trial rather than the date the proceeding was commenced. The condemnor's petition for rehearing was denied by the Court of Appeals on 23 November 1981. The condemnor petitioned this Court for discretionary review pursuant to G.S. § 7A-31. The cause was certified for discretionary review by this Court on 28 January 1982.

*Cooke & Cooke, by Arthur O. Cooke and William Owen Cooke, Attorneys for plaintiff-appellant.*

*Dees, Johnson, Tart, Giles & Tedder, by J. Sam Johnson, Jr., Attorneys for defendant-appellees John L. Irvin and wife, Nancy B. Irvin, Doris Irvin Egerton and husband, George G. Egerton, and Griffin, Deaton & Horsley, by Hugh P. Griffin, Jr. and William F. Horsley, Attorneys for defendant-appellees Charles Watson Irvin, Jr. and Mary S. Irvin.*

MEYER, Justice.

[1] The sole question before this Court is whether the Court of Appeals erred in holding under the particular facts of this case that the date for valuation of respondents' property for purposes of determining just compensation is the date of the trial rather than the date on which the proceeding was commenced by the filing of the petition to condemn respondents' property. We conclude that the proper date for the valuation of respondents' property is the date of the filing of the petition of condemnation, reverse the decision of the Court of Appeals and reinstate the judgment of the trial court with instructions for the proper application of interest on the damage award.

This proceeding was brought by the petitioner, Greensboro-High Point Airport Authority (hereinafter the "Authority") under Chapter 40 of the General Statutes to condemn 90.35 acres of land owned by the respondents for airport purposes. More specifically, the purpose for acquiring the land was for cargo handling facilities in connection with the airport's expansion. The Authority filed its petition to condemn the property on 1 July 1975. Respondents answered, raising numerous defenses and contesting both the necessity and the constitutionality of the taking. Following lengthy discovery by both parties, a hearing was held before the Clerk of Superior Court of Guilford County. On 5 August 1976, the Clerk entered an order overruling respondents' defenses and appointing Commissioners to appraise the property. On 24 November 1976, the Commissioners filed their report with the Clerk. In that report the Commissioners determined the value of the land as of 1 July 1975 to be $310,000.00. The report was confirmed by the Clerk and judgment entered 28 February 1977. Respondents appealed from the Judgment of Confirmation to the judge of the Superior Court. Judge Hal Walker affirmed the Judgment of Confirmation on 6 July 1977 and reserved the issue of compensation for later trial by jury. The respondents appealed to the North Carolina Court of Appeals which affirmed the judgment in a decision reported at 36 N.C. App. 662, 245 S.E. 2d 390 (1978). Respondents' petition for discretionary review was denied and their Appeal of Right dismissed by this Court on 29 August 1978 in an order appearing at 295 N.C. 548, 248 S.E. 2d 726 (1978). Respondents then on 4 December 1978 petitioned the United States Supreme Court for a writ of certiorari which was denied by that Court on 20 February 1979 in an order reported at 440 U.S. 912, 59 L.Ed. 2d 460 (1979). During the pendency of these appeals and prior to the trial of the issue of compensation, the Authority did not deposit the amount of the Commissioners' award with the court.

When the matter was returned to the trial division for a determination of just compensation, a controversy arose as to the proper date for valuing respondents' land. Although prior decisions of this Court had consistently held that the value of the landowner's property in a Chapter 40 proceeding should be determined as of the date the condemnation petition is filed, Judge Fetzer Mills on 2 May 1979 entered a pretrial order directing that

the property be valued as of the date petitioner deposited the amount of the Commissioners' award with the court, or, if no deposit were made, as of the date of the trial and judgment in the case. On 24 May 1979 the Authority petitioned the North Carolina Court of Appeals for a writ of certiorari to review Judge Mills' order. This petition was denied on 18 June 1979 by an order entered for the Court by Carlton, J. which instructed the trial court as follows:

> This Court does not, by this order rule on the efficacy of Judge Mills' order of 2 May 1979 in that it is a pretrial order which may be modified by the trial court prior to or at trial. *See Kings Mountain v. Goforth,* 283 N.C. 316 (1973).

Thereafter Judge Harvey Lupton entered a pretrial order on 24 October 1979 to the effect that, if the matter came on to be heard before him, the valuation date would be the date of the filing of the petition, 1 July 1975. Respondents appealed from this order to the Court of Appeals and the appeal was dismissed by that court on 13 December 1979. Respondents filed a Request for Reconsideration, Vacation or Modification which was denied by the Court of Appeals on 18 December 1979. When the matter came before the trial court again, Judge Lupton was no longer the presiding judge, and then-presiding Judge Walker entered a pretrial order dated 3 November 1980 which directed that the property be valued as of 1 July 1975. Consistent with Judge Walker's order, the case was finally tried at the 3 November 1980 Session of Superior Court, Guilford County using the 1 July 1975 valuation date. The jury returned a verdict in the amount of $400,000.00 and judgment on that verdict was entered on 10 November 1980. Upon entry of the judgment petitioner deposited the full amount of the judgment award with the court. On 2 December 1980 a stipulated order was entered by Judge Walker allowing respondents to withdraw the deposit without prejudice to their right to pursue an appeal from the judgment. Respondents appealed to the North Carolina Court of Appeals. On 20 October 1981 the Court of Appeals filed its decision, reversing the trial court's holding as to the 1 July 1975 valuation date and ordering a new trial with the value of the condemned property to be ascertained "as of the date of trial," rather than the date the proceeding was filed.

Evidence of the respondents admitted in the absence of the jury at the 3 November 1980 trial tended to show that the condemned tract had increased substantially in value between 1 July 1975 and November 1980.

The Authority petitioned the Court of Appeals for rehearing and that petition was denied on 23 November 1981. The Authority then petitioned this Court for discretionary review of the Court of Appeals' decision pursuant to G.S. § 7A-31. The cause was certified for discretionary review by this Court on 28 January 1982. It is the ruling of the Court of Appeals that the valuation date should be ascertained "as of the date of trial" rather than the "date of petition" that the petitioner brings before this Court for discretionary review.

The panel below held in effect that the established rule as to the date of valuation—the date the petition is filed—does not apply unless, after the proceeding is begun by the filing of the petition and the Commissioners' award has been made, the condemnor pays into court the amount of the award pursuant to G.S. § 40-19. We cannot agree. G.S. § 40-19 permits or allows the condemnor to pay the amount of the award if it desires to enter and take possession of the land. The statute as it existed at the pertinent time provides in part:

> *If* the said corporation, at the time of the appraisal, shall pay into Court the sum appraised by the commissioners, then and in that event the said corporation may enter, take possession of, and hold said lands, notwithstanding the pendency of the appeal, and until the final judgment rendered on said appeal.

G.S. § 40-19 (effective 1 October 1971, as amended by 1971 Sess. Laws, ch. 528, s. 37) (emphasis added).[1]

The deposit of the amount of the award by the condemnor is discretionary. G.S. § 40-19 grants the condemnor a right or election to pay the award; it does not require it to do so. Of course, "if" it elects not to exercise its right or option to deposit the funds, no right to enter, take possession and hold the land con-

---

1. G.S. §§ 40-1 to 40-53 were repealed by 1981 N.C. Sess. Laws, ch. 919, s. 1, effective 1 January 1982. For present provisions as to eminent domain see G.S. Chapter 40A. The new G.S. § 40A-28(d) provides that the condemnor "may" make the deposit.

demned arises. In such event the landowner retains possession and the benefits afforded thereby. The only thing which turns on the making of the deposit is the *right* of possession. Clearly, "if" the Authority had made the deposit the established rule would have applied and the valuation date would have been 1 July 1975, the date the condemnation petition was filed. The decision of the Court of Appeals makes the date for valuing the condemned property dependent on whether the condemnor makes the deposit. Neither the wording of the statute nor the decisions of this Court justifies such an interpretation.

We conclude that the decision of the Court of Appeals is patently in conflict with the prior decisions of this Court concerning the date for valuation of property in condemnation proceedings. While the language of our decisions has differed somewhat, this Court has consistently held that the date for the valuation of the property in a Chapter 40 condemnation proceeding is the date on which the petition is filed.

> *Respondents are entitled to recover* as just compensation for the 29.5 acres of land described in the petition *its value at the time it was taken, to wit, the date of the commencement of the proceeding.* No change in the value of said land after said date, *whether caused by the use for which it is to be condemned or not,* can be considered in determining the amount which respondents shall receive and petitioner shall pay as just compensation for same.

*Power Co. v. Hayes,* 193 N.C. 104, 107, 136 S.E. 353, 355 (1927) (emphasis added).

> *For compensation purposes the commencement of the proceeding marks the time of the taking.* Consequently, the owner of the land cannot recover for any improvement placed thereon *or for enhancement thereof due to other causes.* The obvious reason for such conclusion is that the first judicial act in the condemnation process is, in contemplation of law, a setting apart of the property for public use. Therefore, if the proceeding is prosecuted to final conclusion the sovereign is deemed to be the owner from the commencement of the proceeding.

*State v. Floyd,* 204 N.C. 291, 293, 168 S.E. 222, 223 (1933) (emphasis added).

Ordinarily, 'for the purpose of determining the sum to be paid as compensation for land taken under the right of eminent domain, *the value of the land taken should be ascertained as of the date of the taking, and . . . the land is taken within the meaning of this principle when the proceeding is begun.'*

*Charlotte v. Spratt,* 263 N.C. 656, 662, 140 S.E. 2d 341, 345 (1965) (emphasis added).

In a condemnation proceeding under G.S. § 40-11 et seq., ordinarily, 'for the purpose of determining the sum to be paid as compensation for land taken under the right of eminent domain, *the value of the land taken should be ascertained as of the date of the taking, and . . . the land is taken within the meaning of this principle when the proceeding is begun.'*

*City of Kings Mountain v. Goforth,* 283 N.C. 316, 322, 196 S.E. 2d 231, 236 (1973) (emphasis added).

*See Highway Commission v. Black,* 239 N.C. 198, 79 S.E. 2d 778 (1953); *Highway Com. v. Hartley,* 218 N.C. 438, 11 S.E. 2d 314 (1940); *Lumber Co. v. Graham County,* 214 N.C. 167, 198 S.E. 843 (1938); *Light Co. v. Rogers,* 207 N.C. 751, 178 S.E. 575 (1935); *Redevelopment Comm. v. Stewart,* 3 N.C. App. 271, 164 S.E. 2d 495 (1968).

The panel below finds justification for its exception to the established rule by referring to the fact that Justice Bobbitt (later Chief Justice) writing for the Court in two decisions prefaced his statement of the rule with the word "ordinarily":

Ordinarily, 'for the purpose of determining the sum to be paid as compensation for land taken under the right of eminent domain, the value of the land taken should be ascertained as of the date of the taking, and . . . the land is taken within the meaning of this principle when the proceeding is begun.'

*Charlotte v. Spratt,* 263 N.C. 656, 662, 140 S.E. 2d 341, 345.

In a condemnation proceeding under G.S. § 40-11 et seq., ordinarily, 'for the purpose of determining the sum to be paid as compensation for land taken under the right of eminent domain, the value of the land taken should be ascertained as

of the date of the taking, and . . . the land is taken within the meaning of this principle when the proceeding is begun.'

*City of Kings Mountain v. Goforth,* 283 N.C. 316, 322, 196 S.E. 2d 231, 236.

Interpreting these two statements as implying that facts such as the situation presented by the present case might justify imposition of a valuation date other than the date of the filing of the petition, the panel below departed from the general rule. We believe this is a clear misinterpretation of the Court's use of the word "ordinarily." We believe that the Court was referring to exceptions created (1) by those cases where the condemnor takes possession before the proceeding is started wherein the land is valued as of the date of entry because the condemnor might have destroyed improvements and otherwise altered the land prior to the date of the actual filing of the petition, and (2) in all cases of inverse condemnation where the proceeding is brought by the landowner for appropriation of his property. Representative of this latter example is *Hoyle v. City of Charlotte,* 276 N.C. 292, 172 S.E. 2d 1 (1970), also written by Justice Bobbitt, which was an inverse condemnation case brought by a landowner in 1967 for the taking of an air easement over his property. This Court granted a new trial to the respondent, City of Charlotte, because the trial court used the date of the trial (1968) for determining compensation instead of the date the defendant had actually "appropriated" the flight easement (1962). We do not believe that the facts of the case before us justify an exception to the established rule.

We agree with the panel below that *one* of the purposes of the established rule is to prevent the landowner from receiving a windfall when the value of his property is enhanced by the condemnor's project. We believe, however, that the underlying purpose of the rule is much broader. The established rule acts to prevent recovery of *any* appreciation in value after the petition date without regard to whether the increase results from the condemnor's project, the general increase in land values in the neighborhood due to general conditions, or any other reason. It also acts to prevent loss by the landowner resulting from depreciation in value during the same time period without regard to its cause. See *Power Company v. Hayes,* 193 N.C. 104, 136 S.E. 353 (1927), wherein the condemned property had shared in a

Airport Authority v. Irvin

general increase in land values totally unrelated to the condemnor's project, and the date of the taking was determined to be the date of the commencement of the proceeding.

Of interest, though not applicable to this case, is the current provision of Chapter 40A dealing with valuation for purposes of determining just compensation which reads as follows:

§ 40A-63. In general.

*The determination of the amount of compensation shall reflect the value of the property immediately prior to the filing of the petition under G.S. 40A-20 or the complaint under G.S. 40A-41 and except as provided in the following sections shall not reflect an increase or decrease due to the condemnation. The day of the filing of a petition or complaint shall be the date of valuation of the interest taken.*

(Emphasis added.)

We hold that the trial court was correct in fixing the date for valuation of respondents' property as the date of the filing of the condemnation petition and that the Court of Appeals erred in reversing the trial court and remanding for a new trial.

[2] Because of our holding on the proper date for valuation of respondents' property, the question of interest on the jury award arises. Anticipating this question, the parties have treated it at length in their briefs before this Court.

There are two elements of damages legally cognizable in condemnation actions: (1) compensation for the value of property taken, and (2) compensation for any delay in paying for the property once it is taken. In *DeBruhl v. Highway Commission*, 247 N.C. 671, 102 S.E. 2d 229 (1958), this Court, in an opinion by Justice Parker (later Chief Justice), said:

Ordinarily, the legal rate of interest, where the condemned property is located, upon the original sum fixed as compensation for the fair market value of the property on the taking date, is considered a fair measure of the amount to compensate the owner for the delay in paying the award, so as to make just compensation. *Miller v. City of Asheville, supra; Seaboard Air Line R. Co. v. United States, supra; In re City of New York*, 179 N.Y. 496, 72 N.E. 522; *State v. Deal,*

*supra;* 29 C.J.S. Eminent Domain § 176, p. 1055; Orgel on Valuation under Eminent Domain, Second Ed., Vol. I, p. 27; Annotation 36 A.L.R. 2d at page 436; Jahr, Eminent Domain, Sec. 176. See Nichols on Eminent Domain, Third Ed., Vol. 3, Sec. 8.63(3).

247 N.C. at 687, 102 S.E. 2d at 241. *See Power Co. v. Winebarger,* 42 N.C. App. 330, 256 S.E. 2d 723 (1979), reversed on other grounds, 300 N.C. 57, 265 S.E. 2d 227 (1980). *See also Wright v. United States,* 279 F. 2d 517 (1960), where the United States Court of Claims added interest at 4% per annum from the date of the taking in order to compensate for delay in payment. The additional sum awarded for delay in payment of the value of the property taken is not interest *eo nomine,* but interest is a fair means for measuring the amount to be arrived at of such additional sums. *DeBruhl v. Highway Commission,* 247 N.C. at 687, 102 S.E. 2d at 240-41. In the case before us, interest is a necessary element of just compensation and represents the only compensation due for the loss from delay in payment for the taking.

Had the Authority deposited the amount confirmed by the court into the Clerk's office upon the return of the Commissioners' award in order to gain the right to possession of the property, respondents would be entitled to interest at the legal rate on that amount until the money was drawn down by the respondents. The Authority contends that these respondents are not entitled to interest here because (1) the Authority never ousted the respondents who remained in possession of their lands and reaped the benefits of possession, and (2) the Authority never made any deposit and therefore never even acquired the *right* to occupy the land.

The Authority argues that the entitlement to interest is triggered by the condemnor's *taking actual possession* of condemned property prior to completion of the proceeding and the acquisition of title. More correctly stated, it is the *right to take possession* and not the actual possession which triggers the entitlement to interest. It is well settled that the date the condemnor acquires the right to possession is the date from which interest should be paid. *City of Kings Mountain v. Goforth,* 283 N.C. 316, 196 S.E. 2d 231 (1973); *Light Co. v. Briggs,* 268 N.C. 158, 150 S.E. 2d 16 (1968) (per curiam); *Winston-Salem v. Wells,* 249 N.C. 148, 105 S.E. 2d

435 (1958); *see Power Co. v. Winebarger*, 42 N.C. App. 330, 256 S.E. 2d 723 (1979), reversed on other grounds but finding the decision on this point correct, 300 N.C. 57, 265 S.E. 2d 227 (1980).

This was a Chapter 40 proceeding and did not involve a "quick take" procedure. The Authority would have been entitled to immediate possession only upon paying the amount of the Commissioners' award into the office of the clerk. Since it did not elect to do so, the Authority acquired the right of possession at the same time title vested—upon entry of judgment by the trial court awarding damages for the taking and the payment of that amount by the Authority. The Authority contends that because it did not acquire the right to possession until payment of the judgment on the date of its entry, no interest accrued. This would be the case in the ordinary direct condemnation case where the condemnor was enjoined or otherwise legally prohibited from paying the amount of the Commissioners' award into court and taking actual possession of the property. However, in this condemnation proceeding the condemnor *voluntarily chose* not to pay the amount of the Commissioners' award into court and therefore *deprived itself* of the right to actual possession. Here the condemnor *elected* to leave the respondents in possession.[2]

---

2. The Authority argues that any attempt on its part to have taken possession of the land would have been frustrated by the "threatened" use of a restraining order by the respondents. By order of this Court entered 27 January 1982, a letter from the attorney for two of the respondents was added to the Record on Appeal pursuant to Rule 9(b)(6) of the Rules of Appellate Procedure. This letter requested that the Authority give respondents advance notice of any deposit so that the writer's clients could seek a restraining order to prevent the Authority from removing improvements on the property pending final judgment on appeal. Defendants contend that this letter is significant in light of the case of *Airport Authority v. Irvin*, 2 N.C. App. 341, 163 S.E. 2d 118 (1968), an earlier Chapter 40 proceeding by the Authority against these same respondents to condemn an easement to cut the tops of trees encroaching on the approach zone of the airport. In that case the Authority made the deposit but was nevertheless restrained until all issues (including the necessity and right to take) were fully adjudicated.

Even if this letter should be interpreted as a "threat" when viewed in the context of a prior court action between the same parties, it was certainly no more than a threat. No restraining order was ever issued or sought because the Authority never attempted to take possession. Since the Authority never took possession of the land in question prior to trial and it was therefore unnecessary for the defendants to seek a restraining order, it is impossible to determine whether the Authority's fears in this regard were realistic. Like the panel of the Court of Appeals which heard this case below, we cannot accept plaintiff's argument that deposit of the money into court would have been futile.

The choice of whether to make the deposit and enter into possession was that of the Authority and not that of the landowners. The Authority's failure to pay the amount of the award into the clerk's office should not of itself deprive the respondents of the interest to which they would otherwise ordinarily be entitled. The payment of interest from 24 November 1976, the date the Commissioners' Report was filed, would place the respondents in the same position in which they would have been had the Authority deposited the amount of the Commissioners' award when the Commissioners' Report was filed and respondents had not drawn down the deposit. We hold that respondents are entitled to interest at the legal rate from 24 November 1976, the date the Commissioners' Report was filed, to 10 November 1980, the date the Authority paid the amount of the judgment into court.

G.S. § 24-1, as it existed prior to 1 July 1980, provided in effect that the legal rate of interest on the clerk's judgment was six percent per annum. *See Cochran v. City of Charlotte*, 53 N.C. App. 390, 281 S.E. 2d 179 (1981). In 1979, the Legislature raised the legal rate of interest from six percent to eight percent. 1979 Sess. Laws, ch. 1157. By the terms of the 1979 act the eight percent rate applies to judgments entered 1 July 1980 and thereafter. As the judgment in this case was entered on 10 November 1980, the rate to which the respondents are entitled is eight percent.

While *DeBruhl* held that, as a matter of law, the landowners were entitled to have the jury award them interest at the legal rate from the date of taking as an additional sum for delay in payment, we do not believe that that method is the only method of awarding the interest amount. It is standard procedure in this State for the trial judge himself to add interest based on the jury's verdict. As the amount to be added is the same whether awarded by the jury or added by the trial judge, in order to avoid further delay, we hold that the appropriate interest may be added by the trial court on remand.

The decision of the Court of Appeals is reversed and the judgment of that court reversing the trial court and awarding a new trial is vacated. The case is remanded to the Court of Appeals for further remand to the Superior Court, Guilford County for reinstatement of the judgment of the trial court with the addition of appropriate interest by the trial court.

Reversed and remanded.

Justice CARLTON dissenting.

For the reasons given by Judge Arnold in the Court of Appeals' opinion, 54 N.C. App. 355, 283 S.E. 2d 171 (1981), I dissent. As Judge Arnold noted, the position taken by the majority is "patently unfair" to these landowners.